UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE TO UINTAS CONNECTION, and ALLIANCE FOR THE WILD ROCKIES,<br><br>           Plaintiffs,<br><br>v.<br><br>MEL BOLLING, Forest Supervisor Caribou-Targhee National Forest; NORA RASURE, Regional Forester for Intermountain Region, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and the UNITED STATES ARMY CORPS OF ENGINEERS,<br><br>           Defendants,<br>and<br><br>LOWER VALLEY ENERGY, INC., and STATE OF WYOMING,<br><br>           Defendant-Intervenors. | Case No. 4:20-cv-00192-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Defendants' first Motion to Dismiss (Dkt. 23) and renewed Motion to Dismiss (Dkt. 36). On February 4, 2021, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons set forth below, the Court DENIES the first motion as MOOT and DENIES the second motion on its merits.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

This lawsuit involves the proposed installation of a natural gas pipeline stretching from Afton, Wyoming, to Montpelier, Idaho. To provide natural gas to the residents of the Afton and Star Valley, Wyoming area, Lower Valley Energy, Inc. ("LVE") has proposed to construct, operate, and maintain a 12-inch or less diameter high pressure natural gas pipeline, referred to as the Crow Creek Pipeline project, connecting a receiving facility in Afton with a Williams Gas Company interstate trunk line located south of Montpelier, Idaho. In addition to the pipeline itself and the utility corridor, there will be above-ground facilities such as valves and staging areas. The proposed pipeline would traverse the Caribou-Targhee National Forest.

In their Amended Complaint, Plaintiffs challenge the United States Forest Service's (the "Forest Service") and the United States Army Corps of Engineers' (the "Army") approvals of the natural gas pipeline proposed by LVE. Plaintiffs are non-profit public interest organizations dedicated to protecting aspects of the environment. Counts One through Six of the Amended Complaint were included in the Complaint. Those counts challenge the Forest Service's environmental impact statement and record of decision approving the construction, operation, and maintenance of the pipeline across national forest service lands. Plaintiffs allege that the Forest Service's approval violates a variety of environmental statutes, including the National Environmental Policy Act and the Endangered Species Act.

The Amended Complaint includes a new seventh claim as well. That claim challenges the Forest Service and Army's authorization of certain portions of the project

MEMORANDUM DECISION AND ORDER - 2

under Nationwide Permit 12 ("NWP 12"). Plaintiffs allege that the agencies' authorizations are invalid because the United States District Court for the District of Montana issued a preliminary injunction to that effect, and because there is no other valid permit for the portions of the pipeline.

In May 2020, LVE sought a service area determination and waiver of the Natural Gas Act ("NGA") pursuant to 15 U.S.C. § 717f(f) from the Federal Energy Regulatory Commission ("FERC"). *See generally* Dkt. 36-3.[1] Ultimately, in July 2020, FERC granted LVE a service area determination, determined that LVE was a local distribution company, and granted LVE a waiver of the rules and regulations under the NGA. *Id.* at 5–6. These concepts and FERC's order are discussed more fully below.

In April 2020, shortly before LVE sought the determination and waiver, Plaintiffs initiated this action.[2] Dkt. 1. After receiving an extension, and in lieu of filing an answer, Defendants filed a motion to dismiss this case for lack of subject matter jurisdiction. Dkt. 23. Plaintiffs filed a response in opposition. Dkt. 25. Defendants filed a reply. Dkt 26. Pursuant to the Court's Order adopting the parties' litigation plan (Dkt. 18), however, Plaintiffs then filed their Amended Complaint on September 11, 2020 (Dkt. 27). Therefore, Defendants correctly conceded at the hearing that their first motion to dismiss became moot

---

[1] The order is also available in the Federal Energy Guidelines: FERC Reports. *Lower Valley Energy, Inc.*, 172 FERC ¶ 62,013 (2020).

[2] Although the parties did not raise this issue, the Court notes that the local distribution determination came *after* this case was initiated. It was, therefore, arguable that this case, as originally pleaded, should have been filed in the court of appeals. However, both parties relied on FERC's order. And more critically, Defendants did not argue that it was improper for the Court to assess FERC's order in coming to its determination. Ultimately, when FERC's order, the timing of the Amended Complaint, and the rules of law explained in this Order are considered, this case must remain before this Court.

upon Plaintiffs' filing of their Amended Complaint. *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (stating that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent" (cleaned up)).

In response to the Amended Complaint, Defendants filed a renewed motion to dismiss instead of an answer. Dkt 36. Defendants' renewed motion largely consolidates their prior briefing on the NGA issue. They contend that the NGA divests this Court of subject-matter jurisdiction and that a United States Court of Appeals has original and exclusive jurisdiction over this case. They also add a short argument regarding whether Plaintiffs may challenge Defendants' reliance on NWP 12 in this case. The Court held a hearing on the matter on February 4, 2021. The issue is now ripe for adjudication.

### III. LEGAL STANDARD

A federal court may not entertain an action over which it has no jurisdiction. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If the court determines that it does not have subject-matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

### IV. DISCUSSION

The parties agree that if the jurisdictional section of the NGA, 15 U.S.C. § 717r(d)(1), applied in this case, this Court would not have jurisdiction since that statute would provide one of the United States Courts of Appeals with "original and exclusive jurisdiction." *See* Dkt. 39, at 2. The main issue before the Court is whether § 717r(d)(1)

indeed applies in this case. In short, the answer is it does not apply to this case because FERC has designated LVE a local distributor, and therefore LVE and its proposed pipeline are not subject to § 717r(d)(1). The text of the NGA, the NGA's legislative history, a plentitude of caselaw, and FERC's order in this case all support this conclusion. The Court addresses this issue first and then addresses Defendants' arguments related to count seven.

## A. Jurisdiction Under the NGA

District courts have general federal question jurisdiction under 28 U.S.C. § 1331. Therefore, the default rule is that persons seeking review of agency action go first to district court rather than to a court of appeals. Initial review of agency decisions occurs at the appellate court level only when a direct review statute specifically gives the court of appeals subject matter jurisdiction to directly review agency action. The burden of establishing subject matter jurisdiction rests upon the party asserting it. *See, Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Here, the issue is whether the applicable statute specifically gives the court of appeals subject matter jurisdiction to directly review the agency action as an exception to the default rule.

Congress passed the NGA to provide "a comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce." *S. Coast Air Quality Management Dist. v. FERC*, 621 F.3d 1085, 1090 (9th Cir. 2010) (quoting *N. Natural Gas Co. v. State Corp. Comm'n*, 372 U.S. 84, 91 (1963)). The Court begins its analysis with the plain language of the NGA. *See Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1171 n.1 (9th Cir. 2017). Section 1(b) of the NGA dictates whether the NGA is applicable in a certain scenario:

MEMORANDUM DECISION AND ORDER - 5

> *The provisions of this chapter shall apply to* the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, and to the importation or exportation of natural gas in foreign commerce and to persons engaged in such importation or exportation, *but shall not apply to* any other transportation or sale of natural gas or to *the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.*

15 U.S.C. § 717(b) (emphasis added).[3] Section 7(f) is the mechanism by which an entity avails itself of the Section 1(b) local distribution exemption. Specifically, Section 7(f) states, "If [FERC] has determined a service area pursuant to this subsection, transportation to ultimate consumers in such service area by the holder of such service area determination, *even if across State lines*, shall be subject to the exclusive jurisdiction of the State commission in the State in which the gas is consumed." 15 U.S.C. § 717f(f)(2) (emphasis added). In other words, entities that receive a service area determination that they provide local distribution of natural gas, including interstate pipelines, are exempt from the provisions of the NGA.

This statutory backdrop elucidates the meaning of the jurisdictional text of the NGA at issue in this case—§ 717r(d)(1). It states, "The United States Court of Appeals for the circuit *in which a facility subject to section 717b of this title or section 717f of this title* is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency

---

[3] Many of the sections of the NGA are commonly referred to as they appear in their chronological order in the NGA, meaning that 15 U.S.C. § 717 as the first section of the NGA is referred to as "Section 1." In turn, 15 U.S.C. § 717f is referred to as "Section 7." The Court follows this standard practice in this Order.

(other than [FERC]) or State administrative agency acting pursuant to Federal law . . . ." *Id.* Thus, the NGA provides that the only civil actions that must be filed as original proceedings in federal circuit courts are those in which a facility is subject to the listed provisions of the NGA. This is an exception to the general rule that district courts have original jurisdiction of federal questions. 28 U.S.C. § 1331; *cf. Sierra Club v. United States Army Corps of Eng'rs*, 981 F.3d 251, 257 (4th Cir. 2020).

The Court concludes that this statutory text is plain and unambiguous, and the Court therefore need not look to legislative history. *See Guido*, 859 F3d at 1171 n.1 ("Only when statutes are ambiguous may courts look to legislative history." (cleaned up)). Nonetheless, even if the text of the NGA were somehow unclear or ambiguous, the legislative history of the NGA further illustrates that a local distribution service area determination removes FERC and the NGA from the equation. As explained by Congress, Section 7(f) allows entities, even those with interstate pipelines and interstate services, to be deemed local distributors:

> In a handful of instances, there are local distribution companies that have customers in service areas that straddle state lines. Because they provide service in more than one state, they ordinarily would be regulated by FERC. However, section 7(f) of the [NGA] allows FERC to make a determination that such a company is performing a local distribution function. If it makes such a determination, the natural gas company may "enlarge or extend its facilities" in that service area for the purpose of supplying increased market demands in the service area without further authorization by FERC.

S. Rep. No. 100-486, 1988 WL 170006, at *1 (1988). The Senate report goes on to state:

> In those instances, transportation of natural gas to ultimate consumers in such service area by the holder of such service area determination shall be subject

MEMORANDUM DECISION AND ORDER - 7

to the exclusive jurisdiction of the State commission in the State in which the gas is consumed. The section shall apply *even if the transportation is across State lines*.
. . . .

The Committee encourages all natural gas companies who perform activities of a local distribution nature in service areas which cross state lines to see[k] a section 7(f) . . . service area determination. Once granted, the retail transportation of natural gas by *the holder of the service area determination will be subject to state regulation in the state in which the gas is consumed, rather than federal regulation*.

*Id.* at *3–4 (emphasis added). This legislative intent was codified in the previously noted Section 7(f)(2). It demonstrates that Congress intended to exempt certain interstate gas distribution entities through a Section 7(f) service area determination.[4]

With these points in mind, it is no surprise that binding and persuasive precedents are replete with statements that once an entity receives a service area determination of local distribution, the NGA does not apply and instead the applicable state agency regulates that entity's gas distribution activities. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 284 n.3 (1997) ("Section 1(b) of the NGA, . . . explicitly exempts local distribution of natural gas from federal regulation." (cleaned up)); *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 507 (1989) ("Section 1(b) of the NGA . . . , also expressly carves out a regulatory role for the States, however, providing that the States retain jurisdiction over . . . local distribution, and distribution facilities . . . ."); *Fed. Power Comm'n v. Panhandle E. Pipe Line Co.*, 337 U.S. 498, 503–04 (1949) ("Congress in § 1(b) of the [NGA] not only prescribed the intended reach of [FERC's] power, but also specified the areas into which

---

[4] Although Defendants make a countervailing textual argument, discussed further below, they do not argue the NGA is unclear or ambiguous, and they do not cite any legislative history to support their position.

this power was not to extend," noting that one of these areas was "the local distribution of natural gas."); *S. Coast Air Quality Management Dist.*, 621 F.3d at 1091 ("Notably, however, the [NGA] specifically exempted from federal regulation the local distribution of natural gas . . . ." (cleaned up)); *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1036 (9th Cir. 2007) ("The NGA is expressly inapplicable to . . . [']the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.'" (quoting 15 U.S.C. § 717(b))); *Washington Gas Light Co. v. Prince George's Cty. Council*, 711 F.3d 412, 423 n.8 (4th Cir. 2013) ("[B]oth Congress and FERC have expressly indicated that the NGA does not apply to local distribution pipelines . . . .").[5]

Here, FERC determined that LVE is a local distribution company. LVE applied for and received a waiver of FERC's "regulatory requirements ordinarily applicable to natural gas companies under the NGA" through a local distribution service area determination. Dkt. 36-3, at 2. In granting the waiver, FERC noted the interstate aspect of the Crow Creek Pipeline project, mentioned similar cases to LVE's, and analyzed four factors involved in determining whether an entity qualifies for a local distribution service area determination.

---

[5] Defendants argue that *Washington Gas Light Co.* is unhelpful because the issue before the court was preemption, not jurisdiction. Dkt. 36, at 18–19. While the holding of that case indeed dealt with preemption rather than jurisdiction, *see* 711 F.3d at 424, which reduces the persuasive value of the court's statements about the NGA not applying to local distributors, those statements remain somewhat persuasive because the district court and the Fourth Circuit both agreed that, based on the designation of the company as a local distributor, FERC had no jurisdiction and the NGA did not apply. As the district court observed, "FERC's issuance of a blanket certificate resulted in the designation of a service area that, although crossing state lines, treats Washington Gas as a local distribution company." *Id.* at 424 (cleaned up). And the Fourth Circuit stated that because the company was designated as a local distributor it was not subject to the NGA. *Id.* at 414. Beyond that, even if *Washington Gas Light Co.* lacked persuasive value, the binding precedent cited does not. Therefore, Defendants argument regarding *Washington Gas Light Co.*'s persuasive value is uncompelling.

*Id.* at 5–6. FERC specifically noted that "[a]lthough LVE will own facilities that cross state lines, it will operate as a [local distribution company] within its service area," and it will be regulated exclusively by the Idaho Public Utility Commission and the Wyoming Public Service Commission. *Id.* at 3, 6. Ultimately, FERC granted LVE a Section 7(f) service area determination, determined that LVE was a local distribution company, and granted LVE a waiver of the rules and regulations under the NGA. *Id.* at 6–7.

Consequently, when Section 1(b), Section 7(f)(2), and § 717r(d)(1) are read together, the court of appeals does not have original jurisdiction over this case because LVE is a local distributor, which in turn means that § 717r(d)(1) does not apply. The legislative history and caselaw discussed add further credence to this conclusion.

Nevertheless, Defendants make several arguments that § 717r(d)(1) indeed applies, none of which are persuasive. Defendants first focus on the phrase in § 717r(d)(1) "any civil action for the review of an order or action of a Federal agency" and suggest that this means that a United States Court of Appeals has jurisdiction over this case due to the Forest Service's and Army's challenged approval. Dkt. 36, at 14. But this argument neglects the earlier qualifying phrase "in which a facility subject to section 717b of this title or section 717f of this title," limiting the grant of jurisdiction to situations in which the entity is subject to those provisions. The argument also ignores the process for obtaining a service area determination of local distribution and the plain language of Section 1(b), which states that the provisions of the NGA do not apply to the local distribution of natural gas. Therefore, Defendants' opposing textual argument is unavailing.

Defendants next cite cases in which the Ninth Circuit and Fourth Circuit have

exercised original jurisdiction over challenges to federal approvals pertaining to the expansion, modification, and construction of interstate natural gas pipelines. However, the cases Defendants cite are inapposite because they dealt with situations in which FERC was in fact involved in regulating the entities, which in turn was why the courts of appeals had original and exclusive jurisdiction over those cases.[6]

Defendants next argue that Plaintiffs cannot avoid § 717r(d)(1)'s requirements by not including FERC as a defendant in this case. Dkt. 36, at 16. This argument wholly misses the mark. By its own terms, § 717r(d)(1) does not concern itself with whether FERC is a defendant. Such an issue is immaterial to whether § 717r(d)(1) applies.

Additionally, Defendants misread a line from FERC's order in this case and similar lines from comparable cases. Defendants focus on the phrase, "The Commission has consistently recognized that a service area determination under NGA section 7(f) is appropriate for a company primarily engaged in the business of local distribution of natural

---

[6] As background to the following case citations, Section 7(c)(1)(A) addresses the Certificate of Public Convenience and Necessity requirement for facilities that are subject to FERC regulation. *See* 15 U.S.C. § 717f(c)(1)(A). Again, in all the cases Defendants cite, the entities were subject to FERC regulation and the NGA as is evident from their seeking a certificate. *See Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602 (6th Cir. 2010) (addressing pipeline that received a Certificate of Public Convenience and Necessity from FERC); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1108 (9th Cir. 2012) ("Ruby Pipeline . . . filed a formal application with the Federal Energy Regulatory Commission (FERC) seeking a Certificate of Public Convenience and Necessity ("Certificate"), see 15 U.S.C. § 717f(c)(1)(A), authorizing the Project"); *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1456 (9th Cir. 1996) ("Mojave Pipeline . . . holds a FERC-issued section 7 certificate of public convenience and necessity . . . . Mojave Pipeline applied to FERC for another section 7 certificate to construct its proposed Northward Expansion."); *Cowpasture River Pres. Ass'n v. Forest Serv.*, 911 F.3d 150, 160 (4th Cir. 2018), *rev'd and remanded on other grounds* 140 S. Ct. 1837 (2020) (addressing a pipeline that received a Certificate of Public Convenience and Necessity from FERC); *Sierra Club, Inc. v. United States Forest Service*, 897 F.3d 582 (4th Cir. 2018) (addressing a pipeline that received a Certificate of Public Convenience and Necessity from FERC); *Palm Beach County Envtl. Coal. v. Florida*, 651 F. Supp. 2d 1328, 1345 (S.D. Fla. 2009) (addressing extension of pipeline that received a Certificate of Public Convenience and Necessity from FERC).

gas, but subject to [FERC's] NGA jurisdiction because its facilities cross state lines." Dkt. 36-3, at 4. They claim this indicates that LVE is subject to 717f, and therefore § 717r(d)(1) applies. Dkt. 42, at 3–4.

However, this argument misreads the phrase. LVE *was* subject to FERC's NGA regulation at the time LVE applied for a service area determination and waiver. After FERC granted the waiver, however, the regulations no longer applied—and still do not—by operation of the Section 7(f) determination and Section 1(b) under the NGA. Merely because a provision of law applies at one time does not mean it always does. And merely because LVE was subject to the NGA when it applied for a Section 7(f) service area determination does not mean it always is subject to the NGA. Indeed, the language and purpose of Section 1(b) and Section 7(f) are in place to identify when a certain entity is exempt from the NGA. The next line of FERC's order clarifies this same purpose: "The purpose of section 7(f) is to enable a company to enlarge or extend its facilities to supply market demand without prior [FERC] approval." Dkt. 36-3, at 4–5. Moreover, the ultimate disposition of the FERC order itself confirms that the provisions of the NGA are inapplicable. That is, LVE is a local distributor and the rules and regulations of the NGA have been waived for the Crow Creek Pipeline project. Lastly, Defendants are correct that the similar FERC orders have the same line, but those orders are unhelpful to Defendants for these same reasons. *See City of Clarksville, Tennessee*, 146 FERC ¶ 61,074 (2014), *reh'g denied*, 155 FERC ¶ 61,184 (2016) (same result as the FERC order in this case); *City of Toccoa*, 125 FERC ¶ 61,048 (2008) (same result); *Kinder Morgan Interstate Gas*

*Transmission LLC*, 94 FERC ¶ 61,078 (2001) (same result); *Northern Lights, Inc.*, 84 FERC ¶ 61,117 (1998) (same result).

Finally, Defendants seem to think because the Crow Creek Pipeline will cross the state line of Idaho and Wyoming, the NGA *ipso facto* continues to apply despite a local distribution service area determination.[7] But the NGA itself, the caselaw cited, and the record in this case conclusively and swiftly put an end to such a meritless legal position. It appears Congress has concluded that an interstate natural gas operation can still be determined a local distribution, which is the essential criterion under the NGA for exemption in this case. *See* 15 U.S.C. § 717(b) (mandating that the NGA does not apply to the local distribution of natural gas); *id.* § 717f(f)(2) (providing exclusive oversight over the local distribution of natural gas to state commission "even if across State lines").[8] Therefore, the fact that the pipeline or activities of the natural gas entity—here LVE— cross state lines does not alter whether the entity is a local distributor. This in turn determines whether the NGA, and more specifically § 717r(d)(1), applies. Simply put, it does not.[9]

---

[7] Defendants correctly concede that a pipeline solely within one state that is regulated by the state would not be subject to the NGA. 15 U.S.C. § 717(c); *Gen. Motors Corp.*, 519 U.S. at 284 n.3 ("[T]he Hinshaw Amendment to the NGA, 15 U.S.C. § 717(c), exempts from FERC regulation intrastate pipelines that operate exclusively in one State and with rates and service regulated by the State."). What Defendants do not realize, however, is this point further illustrates that Section 1(b) exempts interstate local distributors because, otherwise, subsections (b) and (c) of Section 1 would be redundant. *See Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858, 870 (9th Cir. 2019) (applying the statutory canon of construction presumption against redundancy).

[8] The Natural Gas Policy Act, which works in tandem with the NGA, also instructs that an interstate operation can be a local distribution. *See* 15 U.S.C. § 3371 (a)(1)(A) (explaining that FERC "may, by rule or order, authorize any interstate pipeline to transport natural gas on behalf of any intrastate pipeline; and any local distribution company."); *id.* § 3431 (connecting this authorization to Section 1(b) of the NGA).
[9]

## B. Count Seven

Defendants also contend that count seven in the Amended Complaint must be dismissed. They argue that "even if this Court had subject-matter jurisdiction to hear Plaintiffs' challenge under the NGA, the Court must conclude that Congress did not intend to waive sovereign immunity in regard to suits against" the Army under the Clean Water Act. Dkt. 36, at 20 (cleaned up). However, Defendants concede that an Endangered Species Act "challenge to the Corps' 2017 reissuance of NWP 12 itself would need to be brought in district court . . . ." *Id.* at 14. And Defendants admit that they are relying on NWP 12 in this case. *Id.* at 13. The case that Plaintiffs cite supports this concession. *Sierra Club*, 981 F.3d at 258 (noting that such a challenge to the NWP 12 "is properly reviewable in the district court" and that the Fourth Circuit likely did "not possess jurisdiction to address such a challenge").

Lastly, Defendants' statement that "Plaintiffs have not brought that claim" is simply inaccurate. *See id.* The Amended Complaint states:

> In summary, the Crow Creek Pipeline relies on NWP 12 to establish compliance with Section 404 of the Clean Water Act. However, NWP 12 is unlawful because it violates the ESA. Accordingly, to the extent the Crow Creek Pipeline relies on NWP 12, and/or to the extent the Corps issued verification of a pre-construction notification under NWP 12, the Forest Service and/or Corps are violating the ESA because NWP 12 must undergo programmatic ESA Section 7 consultation before it can be used to approve any new oil or gas pipelines.

Dkt 27, ¶ 229. Thus, Plaintiffs' claim that NWP 12 must undergo programmatic Endangered Species Act consultation before it can be used for the Crow Creek Pipeline will remain before this Court. Because Plaintiffs themselves acknowledge that their theory

MEMORANDUM DECISION AND ORDER - 14

under the Clean Water Act is no longer necessary, they must not proceed on that basis. *See* Dkt. 39, at 17–18. In sum, count seven is not dismissed.

## V. CONCLUSION

For the foregoing reasons, 15 U.S.C. § 717r(d)(1) does not apply to this case. Therefore, this Court is not deprived of its original jurisdiction under 28 U.S.C. § 1331. Additionally, count seven appears, on the arguments made here, to be properly before the Court. Accordingly, Defendant's renewed motion to dismiss must be denied.

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendants' first Motion to Dismiss (Dkt. 23) is DENIED as MOOT.

2. Defendants' renewed Motion to Dismiss (Dkt. 36) is DENIED on the merits.

DATED: March 8, 2021

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15