UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

YELLOWSTONE TO UINTAS
CONNECTION, and ALLIANCE FOR
THE WILD ROCKIES,

      Plaintiffs,

v.

MEL BOLLING, Forest Supervisor
Caribou-Targhee National Forest; NORA
RASURE, Regional Forester for
Intermountain Region; UNITED
STATES FOREST SERVICE, an agency
of the U.S. Department of Agriculture;
and UNITED STATES ARMY CORPS
OF ENGINEERS,

      Defendants,
and

LOWER VALLEY ENERGY and
STATE OF WYOMING,

      Defendant-Intervenors.

Case No. 4:20-cv-00192-DCN

**MEMORANDUM DECISION AND
ORDER**

## I. INTRODUCTION

Pending before the Court is Plaintiffs' Motion to Supplement the Administrative

Record, Complete the Administrative Record, and/or Take Judicial Notice ("Motion to

Supplement"). Dkt. 62. Having reviewed the record and briefs, the Court finds that the

facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART Plaintiffs' Motion.

## II. BACKGROUND

This lawsuit involves the proposed installation of a natural gas pipeline stretching from Afton, Wyoming, to Montpelier, Idaho. To provide natural gas to the residents of the Afton and Star Valley, Wyoming area, Lower Valley Energy, Inc. ("LVE") has proposed to construct, operate, and maintain a 12-inch or less diameter high pressure natural gas pipeline, referred to as the Crow Creek Pipeline project (the "Project"), connecting a receiving facility in Afton, Wyoming with a Williams Gas Company interstate trunk line located south of Montpelier, Idaho. In addition to the pipeline itself and the utility corridor, there will be above-ground facilities such as valves and staging areas. The proposed pipeline would traverse the Caribou-Targhee National Forest. In their Amended Complaint, Plaintiffs challenge the United States Forest Service (the "Forest Service") and the United States Army Corps of Engineers' (the "Army") (together referred to as "Defendants") approvals of the natural gas pipeline proposed by LVE. Plaintiffs are non-profit public interest organizations dedicated to protecting the environment.

Defendants filed a Motion to Dismiss (Dkt. 23) and later filed a renewed Motion to Dismiss (Dkt. 36) after Plaintiffs filed an Amended Complaint (Dkt. 27). After oral argument, the Court denied the Defendants' first Motion to Dismiss as moot and denied

the Defendant's renewed Motion to Dismiss on the merits. Dkt. 47. In due course of discovery, Plaintiffs filed their Motion to Supplement. Dkt. 62. Defendants filed a Response in Opposition (Dkt. 63), to which Plaintiffs filed a Reply (Dkt. 64).

Plaintiffs bring five requests in their Motion: (1) a request that Defendants complete the administrative record with documents from the Army that address the Crow Creek Project; (2) a request that Defendants complete the administrative record with the Environmental Protection Agency ("EPA") Comment Letters referenced in Exhibits 1 and 2; (3) a request that Defendants produce a privilege log disclosing all other withheld documents; (4) a broad request for any documents that were excluded from the record; and (5) a request that the Court take judicial notice of, or supplement the record with, Exhibits 3–12 contained in the Motion to Supplement. Because there is a variety of issues in the instant motion, the legal standard will be discussed with each corresponding issue instead of in a separate section.

At the outset, it is useful to distinguish between completing the record and supplementing the record.[1] Materials that were considered by the agency but were omitted from the administrative record can be used to "complete the record," while "materials which were not considered by the agency but which are necessary for the court to conduct a substantial inquiry" can be used to "supplement the record." *Center for Native*

---

[1] The Court acknowledges that this terminology differs from court to court. For example, what this Court terms "completing the record" is termed "supplementing the record" by the Federal District Court for the District of Columbia, and what this Court refers to as "supplementing the record" is referred to by that district court as "going beyond the record." *See Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111 (D.D.C. 2009). However, the Court's terminology is consistent with the language used by the parties in the instant case, and accords with what other courts have done. *See, e.g., Center for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 n.7 (D. Colo. 2010).

MEMORANDUM DECISION AND ORDER - 3

*Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010).

## III. DISCUSSION

### A. Army Documents Addressing the Crow Creek Project

Plaintiffs ask the Court to require that Defendants complete the administrative record with Army documents addressing the Crow Creek Project. Dkt. 62-1, at 6. Plaintiffs argue that the administrative record is lacking because it does not include an April 2020 verification letter that concluded the Project's proposed crossings of waters of the United States was authorized under Nationwide Permit 12 ("NWP 12"). *Id*. at 2. Because the record is lacking, Plaintiffs argue that the Court can order Defendants to complete the administrative record with Army documents applying NWP 12 to the Project. *Id*. at 3. Defendants argue that because Plaintiffs are bringing a facial challenge to NWP 12, the "NWP verification records are not part of the administrative record" and that consequently there "is no basis to include in the record documents applying NWP 12 to this particular project." Dkt. 63, at 11. Plaintiffs replied that disclosure was appropriate because they were bringing both a facial challenge to NWP 12 as well as a challenge to the site-specific application under the Endangered Species Act ("ESA"). Dkt. 64, at 3.

The Court must deal with the preliminary question raised by Defendants in their response regarding whether Plaintiffs are bringing a facial or an as-applied challenge.[2] The

---

[2] As the Court has explained previously:

> Facial challenges seek to have a statute declared unconstitutional "on its face." This standard presents an extremely high bar because a plaintiff must show that the statute is unconstitutional *in all* possible applications and situations. *See Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) (finding "a facial challenge to a legislative Act is . . . the most

(Continued)

plain language of both the Amended Complaint (Dkt. 27) and the Court's prior Order (Dkt. 47) both indicate that the challenge to NWP 12 is a facial challenge, not an as-applied one. The Amended Complaint, Seventh Claim for Relief, states that:

> NWP 12 is unlawful because it violates the ESA. Accordingly, to the extent the Crow Creek Pipeline relies on NWP 12, and/or to the extent the Corps issued verification of a pre-construction notification under NWP 12, the Forest Service and/or Corps are violating the ESA because NWP 12 must undergo programmatic ESA Section 7 consultation before it can be used to approve any new oil or gas pipelines.

Dkt. 27, at 51. The Court's Order also clearly shows that Plaintiffs were bringing a facial challenge, as the Court held that "Plaintiffs' claim that NWP 12 must undergo programmatic ESA consultation before it can be used for the Crow Creek Pipeline will remain before this Court." Dkt. 47, at 14. The term "programmatic" used in both the Amended Complaint and the previous Court Order refers to broader issues with NWP 12, not case-specific issues.

Here, it is clear that Plaintiffs are attacking the Project but are also attacking the constitutionality of NWP 12 itself—a facial challenge. Plaintiffs' complaint focused on the

---

difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

. . . .

As-applied challenges, on the other hand, do not look at the text, or face, of the statute, but rather argue that even if a law is valid on its face, it may nonetheless—as the name suggests—be unconstitutionally applied. The question in an as-applied challenge is whether the statute is unconstitutional when applied in a particular case. *See Tsirelman v. Daines*, 19 F. Supp. 3d 438, 447–48 (E.D.N.Y. 2014), *aff'd*, 794 F.3d 310 (2d Cir. 2015).

*Does 1-134 v. Wasden*, No. 1:16-CV-00429-DCN, 2018 WL 2275220, at *4 (D. Idaho May 17, 2018); *see also Hecox v. Little*, 479 F. Supp. 3d 930, 968 n. 25 (D. Idaho 2020) (discussing the interrelated and convoluted nature of facial and as-applied challenges).

"programmatic" issues with NWP 12 instead of the site-specific application errors in NWP 12, which one would expect to see in a typical as-applied challenge. Plaintiffs' Amended Complaint states that the use of NWP 12 violates the ESA only "to the extent" it was used. While a successful facial challenge may indicate that the ESA was violated in this site-specific application, that consequence does not automatically make the Plaintiffs' challenge an as-applied challenge.

Additionally, interpreting Claim 7 as an "as-applied" challenge would functionally amend the Complaint. It would defeat the entire distinction between as-applied challenges and facial challenges if the Court ruled that as-applied challenges are inherently part of a facial challenge, which is in essence what the Court is being asked to do. There is a long history of precedent from every single federal court maintaining the distinction between these two types of challenges, and the Court does not see fit to act otherwise. Thus, the Court holds that Plaintiffs are bringing a facial challenge to NWP 12 in Claim 7.

Plaintiffs err by analogizing this case to *Sierra Club v. United States Army Corps of Engineers* because the facts in *Sierra Club* are significantly different from the instant case. 981 F.3d 251 (4th Cir. 2020). Petitioners in *Sierra Club* brought a challenge that "the Verification [of a pipeline project] is unlawful because the Army Corps violated the Endangered Species Act ("ESA") when it reissued NWP 12 in January 2017; thus, ostensibly, because the Verification relies on NWP 12, it must necessarily be arbitrary, capricious, and not in accordance with law." *Id*. at 256. The Fourth Circuit declined to hear this question because it lacked jurisdiction. *Id*. While the Natural Gas Act did give the Fourth Circuit original jurisdiction to hear questions of natural gas facility licenses that was

involved in the petitioners' claim, the Fourth Circuit held that:

> In form, Petitioners purport to seek review only of the Verification and Reinstatement themselves, not NWP 12. But in substance, Petitioners are actually seeking collateral review of a separate decision – the Army Corps Secretary's findings and conclusions in its reissuance of NWP 12, not the Huntington and Norfolk Divisions' *reliance* on NWP 12 in issuing the Verification and Reinstatement. In so doing, Petitioners are attempting an end run around the narrow jurisdictional provisions that govern review of permits for natural gas pipeline projects.

*Id*. at 257. In other words, the Fourth Circuit held that the two issues—the review of NWP 12 and the reliance on it for authorizing the pipeline—were irreconcilably tied for the purposes of jurisdiction. This jurisdictional issue arose because the Fourth Circuit could only hear challenges to the pipeline project itself, not the review of NWP 12. Thus, this distinction between the challenge to NWP 12 and the challenge to the pipeline *Sierra Club* was made on procedural grounds, not substantive. It is important to note that the Fourth Circuit never used the terms "facial" and "as-applied" challenge. The Fourth Circuit's sole focus was jurisdictional, and, therefore, its analysis is not directly applicable to the situation at hand.

Regardless of the type of claim brought by Plaintiffs, Defendants erred by not including the NWP 12 determination in the administrative record. An administrative record "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citations and quotations omitted) (emphasis in original). "The administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary."

*In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017), *vacated on other grounds*, *In re*

*United States,* 138 S. Ct. 443 (2017). To overcome that presumption, a plaintiff must

"identify reasonable, non-speculative grounds for the belief that . . . documents were

considered by the agency and not included in the record." *Beverly Hills Unified Sch. Dist.*

*v. Fed. Transit Admin.*, 2018 WL 5919218, at *3 (C.D. Cal. Sept. 17, 2018) (quoting *Ctr.*

*for Food Safety v. Vilsack*, 2017 WL 1709318, *3 (N.D. Cal. May 3, 2017)).

      Defendants have admitted that "the Corps issued a verification letter in April 2020

concluding that the project's proposed crossings of waters of the United States were

authorized under Nationwide Permit 12." Dkt. 36-1, at 6. This document was excluded

from the administrative record provided by Defendants in the instant case. The verification

letter clearly indicates that the Army has at least one document regarding the authorization

of NWP 12 in the Project, and likely has more. Accordingly, Plaintiffs have met their

burden.

      As such, even though Plaintiffs are proceeding on a facial challenge, the Court

orders Defendants to complete the administrative record. Even if Plaintiffs are not able to

use it in their facial claim, the administrative record must be complete. An administrative

record consists of "all documents and materials directly or indirectly considered by agency

decision-makers" *Thompson,* 885 F.2d at 555 (emphasis deleted). It is not all documents

*related to pending claims*, as Defendants incorrectly claim in their single, rather conclusory

paragraph in response to Plaintiffs' motion. "All documents" means "all documents." It is

clear the verification letter played a role in the actions the Defendants took in this case. As

such, the parties (and the Court) should have it available for consideration. In sum, the

Court hereby orders Defendants to complete the administrative record with the documents applying NWP 12 to the Project.

## B. EPA Comment Letters

Plaintiffs also moved that Defendants complete the administrative record with the EPA Comment Letters referenced in Exhibits 1 and 2 of their Motion. Dkt. 62-1, at 8. In conjunction with this request, Plaintiffs also seek a privilege log from Defendants and make a blanket request for all other documents. *Id.* at 9–10. Defendants oppose these requests, arguing that the Exhibits 1 and 2 are deliberative documents, and, therefore, outside the record. Dkt. 63, at 11.[3] The Court will first discuss the question of whether the documents are deliberative before determining whether Defendants must complete the record. The Court will then take up the matter of the privilege log and the blanket request for other documents.

### 1. Exhibits 1 and 2 Are Deliberative Documents

As a preliminary matter, the Court must determine whether Exhibits 1 and 2 are deliberative documents. The Supreme Court has held that documents protected by the deliberative process privilege include "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions are made." *U.S. Fish and Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 785 (2021), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The Ninth Circuit has also given several hallmarks of deliberative documents. Examples include

---

[3] There is no question of whether the documents exist, as the Forest Service has admitted their existence. Dkt. 63, at 5.

"recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinion of the writer rather than the policy of the agency." *Sierra Club, Inc. v. U.S. Fish and Wildlife Serv.*, 925 F.3d 1000, 1015 (9th Cir. 2019), *vacated on other grounds*, *U.S. Fish and Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 788 (2021).

Deliberative documents can originate from outside the agency seeking to utilize the protection. In *U.S. Fish and Wildlife Services v. Sierra Club*, the Supreme Court held that draft opinions written by staff members at the U.S. Fish and Wildlife Services and the National Marine Fisheries Service were deliberative documents, even though the drafts were used to help a separate agency, the EPA, promulgate a rule. 141 S. Ct. 777, 788 (2021). The Supreme Court emphasized that the documents were deliberative because they did not represent a final agency decision. *See id*. at 785–86. While that particular case centered around a FOIA request, the principles outlining what constitutes a deliberative document are applicable in the instant case.

Exhibit 1 is a comment letter to the Forest Service from the EPA. Dkt. 62-2. The comment letter includes the EPA's concerns regarding the need for the Project, the range of alternatives in the Environmental Impact Statement, as well as its concerns regarding wetlands, stream crossings, cumulative impacts, impacts on sagebrush habitat and other vegetation, climate change, hazardous materials, and unauthorized off-highway vehicle ("OHV") use along the pipeline right of way. *Id*. at 2–6.

Exhibit 2 is another comment letter from the EPA. In it, the EPA raised several issues including "concerns with historic/cultural sites that need to be resolved," climate

change, groundwater impacts, and a need to analyze the impacts on the full pipeline corridor. Dkt. 62-3, at 3–4.

After review, the Court concludes that both exhibits are clearly deliberative documents. They match the Supreme Court and Ninth Circuit's hallmarks of deliberative documents, as both exhibits use of the term "recommend" throughout. *E.g.* Dkt. 62-2, at 3; Dkt. 62-3, at 3. They are not final documents but are obviously intended to help the Forest Service create its final decision. These two exhibits are prototypical examples of deliberative documents.

Exhibits 1 and 2 were written by the EPA to help a separate agency, the Forest Service, decide whether to authorize a project. Like the documents in *U.S. Fish and Wildlife Services*, the letters were written before the final agency decision was made and were intended to help another agency during the deliberation process. Because it is clear that the documents were deliberative, and the point of origin does not destroy the deliberative nature of them, the Court holds that Exhibits 1 and 2 are deliberative documents. The Court is mindful that this area of the law has the potential to be abused by agencies. If such abuse is seen, the Court will use its power to halt such gamesmanship. But in this case, the Court sees no abuse by Defendants.

2. *Deliberative Documents Are Not Included in Administrative Materials*

Having found Exhibits 1 and 2 are deliberative documents, the Court must next determine whether deliberative documents are included in the administrative record. Unfortunately, "[t]he Ninth Circuit has not squarely resolved whether deliberative documents must be part of the administrative record." *Save the Colorado v. U.S. Dep't of*

*the Interior*, 517 F. Supp. 3d 890, 896 (D. Ariz. 2021). With no binding precedent from the Ninth Circuit, district courts within the circuit are split on the question. Some district courts reason that because judicial review is limited to the agency's stated reasons, deliberative materials are correctly excluded from the administrative record.[4] Other courts, however, reason that deliberative materials are properly included in the administrative record under the Ninth Circuit's broad definition of "the whole record."[5] As far as the Court can tell, district courts are split somewhat evenly between the two camps.

When resolving issues of administrative law, "many courts look to D.C. Circuit case law in APA review cases, as the majority of such disputes occur in that circuit." *ASSE Int'l, Inc. v. Kerry*, 2018 WL 3326687, at *2 (C.D. Cal. Jan. 3, 2018). "The D.C. Circuit has consistently held that, absent a showing of bad faith or improper behavior, 'deliberative documents are not part of the administrative record.'" *Save the Colorado*, 517 F. Supp. 3d at 897 (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)). The Sixth Circuit has also similarly held. *In re United States Department of Defense and United States Environmental Protection Agency Final Rule*, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) ("Deliberative process materials are generally exempted from inclusion in the record

---

[4] *E.g.*, *Blue Mountains Biodiversity Project v. Jefferies*, 2021 WL 3683879 (D. Or. Aug. 19, 2021); *Save the Colorado v. U.S. Dep't of the Interior*, 517 F.Supp.3d 890, 897 (D. Ariz. 2021); *United States v. Carpenter*, 2011 WL 4763675 (D. Nev. Oct. 7, 2011); *Golden Gate Salmon Ass'n v. Ross*, 2018 WL 3129849 (E.D. Cal. June 22, 2018); *Carlsson v. U.S. Citizenship & Immigration Servs.*, 2015 WL 1467174 (C.D. Cal. Mar. 23, 2015); *Ctr. for Biological Diversity v. Zinke*, 2018 WL 8805325 (D. Alaska Nov. 16, 2018).

[5] *E.g.*, *Ctr. for Env'tl Health v. Perdue*, 2019 WL 3852493 (N.D. Cal. May 9, 2019); *Mickelsen Farms, LLC v. Animal & Plant Health Inspection Serv.*, 2017 WL 2172436 (D. Idaho May 17, 2017); *Indigenous Env'tl Network v. U.S. Dep't of State*, 2018 WL 1796217 (D. Mont. Apr. 16, 2018); *Washington v. U.S. Dep't of Homeland Sec.*, 2020 WL 4667543 (E.D. Wash. Apr. 17, 2020).

in order to protect the quality of agency decisions by ensuring open and candid communications.").

In *Save the Colorado*, the District Court for the District of Arizona concluded that deliberative documents are not properly part of the administrative record:

> The Court's task is to assess the lawfulness of the agency's action based on the reasons offered by the agency, not to probe the mental processes of agency decision-makers. Moreover, the Ninth Circuit has cautioned that forced disclosure of predecisional deliberative communications can have an adverse impact on government decision-making. Indeed, requiring disclosure of deliberative materials would chill the frank discussions and debates that are necessary to craft well-considered policy . . . . The absence of these documents does not overcome the presumption of regularity and the Department need not supplement the administrative record with deliberative materials.

517 F.Supp.3d at 897 (internal quotation marks and citations omitted).

The Court concurs with the reasoning of its fellow district court in *Save the Colorado* and with the D.C. Circuit: deliberative materials are not properly part of the administrative record. It is worth noting that Judge B. Lynn Winmill of this District recently held that deliberative materials are not categorically excluded, but rather should be reviewed by the Court to determine whether they should be included in the administrative record. *Friends of the Clearwater v. Higg*ins, 523 F. Supp. 3d 1213, 1227–30 (D. Idaho 2021). Judge Winmill's holding influenced his attendant decision regarding whether deliberative documents should be part of a privilege log. Because this issue is a procedural discovery issue, the Court has discretion to handle this matter and it is therefore appropriate to categorically exclude deliberative documents except for the above-mentioned exceptions.

MEMORANDUM DECISION AND ORDER - 13

3.  *Release of the Records in the FOIA Request Did Not Waive the Privilege*

Based on the above reasoning, Exhibits 1 and 2 are deliberative documents and as such should be properly excluded from the record. However, Plaintiffs raise the argument that Defendants have waived their deliberative process privilege by releasing Exhibits 1 and 2 in response to Plaintiffs' earlier FOIA request. Dkt. 62-1, at 13. Thus, the question before the Court is: Does releasing a document in a FOIA request (i.e., not protecting it using the deliberative process privilege) waive the government's right to claim deliberative process privilege in other settings, such as excluding deliberative documents from an administrative record? In the case at hand, the answer is no.

The whole concept of deliberative documents and deliberative process privilege can be easily confused. The deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. Although this privilege is most commonly encountered in Freedom of Information Act ("FOIA") litigation, it originated as a common law privilege." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (cleaned up). Documents that meet the above-mentioned hallmarks are commonly referred to as deliberative documents. It is worth emphasizing that deliberative process privilege is found in non-FOIA contexts as well. The context in which the privilege is invoked has an impact on how the privilege is seen by a court.

MEMORANDUM DECISION AND ORDER - 14

The issue of waiver for deliberative documents obtained through FOIA requests[6] is not commonly discussed. The Court has found two holdings that discuss the effects of FOIA disclosure on the deliberative documents in the administrative record. The District Court in the District of Delaware held that:

> A FOIA production request is an entirely discrete legal concept that bears no relation to the administrative record compiled for a court's review under the APA. Moreover, requiring the addition of voluntarily disclosed deliberative materials to the administrative record runs afoul of an important policy underlying the deliberative process privilege, to wit, that 'officials should be judged by what they decided[,] not for matters they considered before making up their minds.'

*State of Del. Dept. of Nat. Resources & Env'tl Control v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 535, 544 (D. Del. 2010) (quoting *Jordan v. U.S. Dept. of Justice*, 591 F.2d 753, 722 (D.C. Cir. 1978)).

The District Court for the District of Columbia more thoroughly examined the tension between the waiver of deliberative process privilege and the need to protect deliberative documents. It held:

> The agency contends, with good reason, that the mere fact that a document has been released under FOIA does not require its inclusion in an administrative record. The Court agrees that the questions at issue and the deliberations that give rise to the privilege in question may be completely separate from a FOIA analysis. *See, e.g., State of Del. Dept. of Nat. Resources & Env'tl Control v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 535, 544 (D. Del. 2010) ("A FOIA production request is an entirely discrete legal concept that bears no relation to the administrative record compiled for

---

[6] As helpful background, it is clear that non-deliberative agency documents obtained through FOIA requests do not automatically become part of the initial administrative record if the agency has not relied on them. For example, in *South Yuba River Citizens League v. National Marine Fisheries Service*, the district court held that plaintiffs could move to supplement the administrative record with previously excluded documents obtained through FOIA requests only "if they can demonstrate those documents should have been included in the administrative record." 2008 WL 3932358 (E.D. Cal. Aug. 26, 2008). *Accord Stand Up for Cal.! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 117 (D.D.C. 2014).

a court's review under the APA."). The same analysis would apply to a document obtained outside the FOIA process: the mere fact that a plaintiff possesses such a document does not render it part of an administrative record.

The D.C. Circuit has already decided that public disclosure of deliberative materials does not necessarily mandate inclusion in the administrative record. *See Kansas State Network, Inc. v. FCC*, 720 F.2d 185, 191-92 (D.C. Cir. 1983) (in action seeking review of FCC's denial of application for tax certificate, refusing to consider a transcript of public deliberations regarding the application); *Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1323-29 (D.C. Cir. 1984) (denying motion to supplement administrative record and the record on appeal with transcripts of Commission's deliberations and finding it unnecessary to reach the question as to whether public disclosure of those transcripts was required under the Sunshine Act, 5 U.S.C. § 552b), vacated in part on other grounds, *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 760 F.2d 1320 (D.C. Cir. 1985). This conclusion is not surprising because only materials considered directly or indirectly in rulemaking should be part of the record on review.

On the other hand, a document that was privileged as part of the deliberative process can lose its privilege when revealed outside the agency. *In re Sealed Case*, 121 F.3d at 741-42 (holding that the White House "waived its claims of privilege in regard to the specific documents that it voluntarily revealed to third parties outside the White House"). That is what happened here. CMS waived any deliberative process privilege in the FFS Adjuster Documents to the extent that information was not redacted when it released them to the public. Thus, the privilege does not prevent the FFS Adjuster Documents from being made part of the administrative record.

*UnitedHealthcare Insurance Company v. Azar*, 316 F. Supp. 3d 339, 348–349 (D.D.C. 2018). As is readily apparent from this holding, the effectiveness of a waiver must be determined on a case-by-case basis.

Plaintiffs point to *In re Sealed Case* for the principle that "release of a document . . . waives these [deliberative process] privileges for the document or information specifically released." *In re Sealed Case*, 121 F. 3d 729, 741 (D.C. Cir. 1997). While the Court agrees

that a waiver *can* occur in the event of a release of a previously privileged document, *In re Sealed Case* does not *mandate* that a waiver occurs in the event of a release.

*In re Sealed Case* is set against the backdrop of a Washington political dispute between the Office of Independent Counsel ("OIC") and the former Secretary of Agriculture Mike Espy. *Id*. at 734. As Espy's former employer, the White House was also involved. *Id*. The OIC was investigating Espy for corruption. *Id*. at 735. The OIC attempted to compel performance of a subpoena *duces tecum* issued by the grand jury investigating Espy. *Id*. at 734. The White House had provided several documents, but withheld 84 documents as privileged. *Id*. The White House asserted both the deliberative process privilege and the presidential communications privilege. *Id.* at 740. One of those documents that the White House asserted privilege over, document 63, had already been given to Espy's counsel by the White House. *Id*. OIC argued that the release of document 63 was "evidence of a privilege waiver." *Id*. In that particular case, the court ruled that the White House's *voluntary* reveal to third parties outside the White House waived the privilege status of the document.

The situation at hand is quite different than the situation in *In re Sealed Case*. First, the issue here is over an administrative record from the Forest Service involving a pipeline project, not over presidential documents. Second, the instant case involves a FOIA request that the Forest Service was bound by law to respond to, not a voluntary sharing of information to an outside party. Most importantly, the D.C. Circuit never held that the release of any privileged document automatically waives the privilege. The District Court for the District of Columbia acknowledged as much in their own case. *UnitedHealthcare*

MEMORANDUM DECISION AND ORDER - 17

*Insurance Company*, 316 F. Supp. 3d at 349.

In addition to the above-mentioned case law, the Court's inclination is to not allow the deliberative documents to be included in the administrative record. The Court's role in reviewing the administrative record in an agency review case such as this is more akin to an appellate court than it is a district court. With this appellate-like review comes a natural tendency towards disallowing additional information into the administrative record. With no clear and widely adopted rule governing this situation, the Court will follow its inclination and hold that privilege was not waived under the circumstances. These situations are complicated and best handled on a case-by-case basis. In the future, some factors may lead the Court to rule that disclosure was a waiver. Here, however, given the totality of the circumstances, the FOIA disclosure did not waive the deliberative process privilege. As such, Plaintiffs' request that Defendants complete the administrative record with Exhibits 1 and 2 is DENIED.

4. *Defendants Do Not Need to Produce a Privilege Log*

Plaintiffs requested that Defendants produce a privilege log listing the excluded documents. Dkt. 62-1, at 13. Plaintiffs argue that "[p]rivilege logs are required when a party intends to withhold documents based on the deliberative process privilege." *Id*., quoting *Sierra Club v. Zinke*, 2018 W.L. 3126401, at*5 (N.D. Cal. 2018).   Here, Defendants did not rely on the deliberative process privilege embodied in FOIA but rather on the status of the documents as deliberative documents. "[D]eliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F.

Supp. 2d 15, 32 (D.D.C. 2013), aff'd sub nom. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015) (citations and quotations omitted). *Accord California v. U.S. Dep't of Labor*, 2014 WL 1665290, at *13 (E.D. Cal. Apr. 24, 2014). Because the Court has held that Exhibits 1 and 2 are deliberative documents, they do not need to be logged on a privilege log because they were not excluded on a privileged basis. As Plaintiffs have not demonstrated any privileged documents that would require a privilege log, their request for Defendants to produce a privilege log is DENIED.

### 5. *Defendants Do Not Need to Produce Other Documents*

Finally, Plaintiffs make a blanket request for any other documents that were excluded, arguing that "there is a reasonable likelihood that other documents were excluded" because Exhibits 1 and 2 were excluded. Dkt. 62-1, at 9–10. The standard is clear that "[t]he administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary." *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017), *vacated on other grounds, In re United States*, 138 S. Ct. 443 (2018). To overcome this presumption of completeness or regularity a plaintiff must "identify reasonable, non-speculative grounds for the belief that . . . documents were considered by the agency and not included in the record." *Beverly Hills Unified Sch. Dist. V. Fed. Transit Admin.*, 2018 WL 5919218, at *3 (C.D. Cal. Sept. 17, 2018) (quoting *Ctr. For Food Safety v. Vilsack*, 2017 WL 1709318, at *3 (N.D. Cal. May 3, 2017)). Plaintiff may also overcome this presumption by "a strong showing of bad faith or improper behavior." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). To be clear, the burden is on the plaintiff. *See Columbus Regional Hosp.*

*v. Federal Emergency Management Admin.*, 2011 WL 3476576, at \*4 (S.D. Ind. Aug. 9, 2011).

Here, Plaintiffs have only identified two documents they claim were improperly excluded out of 681 documents they received in their FOIA request. As the Court has explained, those two documents were properly excluded because they were not part of the administrative record to begin with. Without those two documents to rely on, Plaintiffs do not have any basis to claim the Defendants have improperly excluded other documents. Without any improperly excluded documents to point to, the Plaintiffs claim does not have enough substance to overcome the presumption of regularity afforded to the administrative record. Plaintiffs also have not adequately alleged bad faith or improper behavior, again because no improperly excluded documents or inappropriate behavior were identified. *Accord TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (holding that three documents were allegedly inappropriately excluded out of 5,000 pages from a FOIA request is not strong evidence of bad faith or an incomplete record). Plaintiffs' generalized assertions there *might* be other documents that must be produced cannot carry their argument. Accordingly, the Court DENIES Plaintiffs' blanket request for other documents.

### C. Exhibits 3–12 of the Motion to Supplement

Plaintiffs have also requested that the Court either take judicial notice of Exhibits 3–12 or supplement the administrative record with Exhibits 3–12. Dkt. 62-1, at 15. Defendants agree that "the Court may take judicial notice of the documents included as Exhibits 3–11 to plaintiffs' motion for the limited purpose of proving the existence and contents of such documents, not for the truth of the matters asserted therein." Dkt. 63, at

20. However, Defendants only agreed that Plaintiffs "may cite to" Exhibit 12, not that the Court should take judicial notice of Exhibit 12. *Id*. Thus, the Court has three options before it to review—judicial notice, supplementing the administrative record, or allowing citations to external sources. All three will be analyzed in turn.

A review of the content of Exhibits 3–12 is appropriate first. Exhibits 3–12 are all government documents either publicly available on a government agency website or on the Federal Register as part of the Forest Service's own records. Exhibit 3 is the U.S. Fish and Wildlife Service's 2014 Lynx Critical Habitat Rule. Exhibit 4 is the Forest Service Greater Sage-grouse Monitoring Annual Report October 2015–September 2019. Exhibit 5 is the U.S. Fish and Wildlife Service's 2015 Sage Grouse Not Warranted Rule. Exhibit 6 is the Forest Service's August 25, 2020 Objection Response Letter for 2019 Proposed Forest Plan Sage Grouse Amendments. Exhibit 7 is U.S. Forest Service Sage-Grouse[7] Bulletin #17 February 2021. Exhibit 8 is the U.S. Fish & Wildlife Service's 2010 Sage Grouse Warranted but Precluded Rule. Exhibit 9 is the Idaho and Southwestern Montana Greater Sage-Grouse Proposed Land Use Plan Amendment and Final Environmental Impact Statement. Exhibit 10 is the April 2019 "BLM Western U.S. GRSG Biologically Significant Units April 2019" map of sage grouse conservation areas. Exhibit 11 is the Idaho and Southwestern Montana Greater Sage-Grouse Approved Resource Management Plan Amendment, Attachment 1 from the U.S. Department of Interior 2015 Record of Decision and Approved Resource Management Plan Amendments for the Great Basin

---

[7] The Court acknowledges the variation in the capitalization and use of hyphens when referring to "sage grouse" in this paragraph. These spellings come directly from the government documents.

Region including the Greater Sage-Grouse Sub-Regions of: Idaho and Southwestern Montana, Nevada and Northeastern California, Oregon, and Utah. Exhibit 12 is the Forest Service Manual.

### 1. *Judicial Supplementation of the Record*

Both the Supreme Court and the Ninth Circuit have emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). While Plaintiffs may submit declarations for the purpose of establishing standing, *see Nw. Env'tl Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527 (9th Cir. 1997), "consideration of extra-record evidence to determine the correctness . . . [or] wisdom of the agency's decision is not permitted." *Nw. Env'tl Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006) (cleaned up); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980).

Indeed, supplementing the record is only appropriate when "it appears the agency has relied on documents or materials not included in the record." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir.1993). The Ninth Circuit has held that:

> In limited circumstances, district courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter,"

> or (4) when plaintiffs make a showing of agency bad faith. These limited exceptions operate to identify and plug holes in the administrative record. Though widely accepted, these exceptions are narrowly construed and applied.

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (cleaned up). Plaintiffs bear the burden of demonstrating with particularity that the extra-record evidence they proffer falls within one of the enumerated exceptions. *See Animal Def. Council v. Hodel*, 840 F.2d 1432, 1438 (9th Cir. 1988), opinion amended by 867 F.2d 1244 (9th Cir. 1989).  The Court cannot help but stress how limited these exceptions are, as "[a] court that orders an administrative agency to supplement the record of its decision is a rare bird." *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010).

Here, Plaintiffs claim that "Exhibit 3 is necessary to determine 'whether the agency has considered all relevant factors,' i.e., whether the Project is consistent with the lynx critical habitat rule that is currently in effect." Dkt. 62-1, at 19. Plaintiffs similarly argue that Exhibits 4, 6, 7, 9, 10, and 11 are necessary to determine "whether the agency has considered all relevant factors" to determine which sage grouse standards apply and whether Defendants are applying those standards. *Id.* at 20. Plaintiffs contend that supplementing the administrative record with Exhibits 5 and 8 is appropriate "to explain technical terms or complex subject matter" and to "ensure that 'the agency has considered all relevant factors'" regarding the cumulative effects of the Project on the sage grouse. *Id.*, quoting *Lands Council*, 395 F.3d at 1030. Finally, Plaintiffs assert that Exhibit 12 should be added to determine whether "the agency has considered all relevant factors" regarding the Forest Service's rules for special use permits. *Id.* at 21.

In sum, Plaintiffs have argued that each exhibit should be allowed under the "relevant factors" exception. The "relevant factors" exception only applies where supplementing the record is necessary to allow judicial review. Where "[t]he record contains sufficient information to explain how the [agency used the information before it] and why it reached its decision[,]" the exception does not apply. *Cook Inletkeeper v. EPA*, 400 Fed. App'x 239, 240–41 (9th Cir. 2010). Here, the administrative record, for the purposes of this motion, is sufficient, and the extra information is not needed to supplement the record.

Exhibits 3–12 are certainly relevant to Plaintiffs' argument and would undoubtedly be useful. But useful is not the same as necessary, and Plaintiffs have provided no evidence these documents are necessary. Plaintiffs provided mostly conclusory statements that Exhibits 3–12 should be admitted and spent the bulk of two and a half pages in their motion explaining what the Exhibits are and which exception they could be admitted under instead of explaining why the Exhibits meet the high standard needed to supplement the record.

To be fair, some of Plaintiffs' stated reasons do hold weight, such as wanting to admit Exhibit 3 to determine whether the Forest Service applied the correct version of the lynx critical habitat rule. Dkt. 62-1, at 19. But these reasons are not thoroughly explained. When weighing the amount of deference owed to agency action, and the burden plaintiffs must meet, it is clear that Plaintiffs have not met their burden of persuasion to admit Exhibits 3–12 under the "relevant factors" exception. Plaintiffs also argue that Exhibits 5 and 8 should be admitted as supplementation to "explain technical terms or complex subject matter." *Id*. at 20. Again, Plaintiffs offer only conclusory allegations and sparse

reasoning. Claiming that Exhibits 5 and 8 are "necessary background and context" is not persuasive, especially as Plaintiffs fail to point to anything in the record that would be unduly technical or complex.

Because Plaintiffs have failed to meet their burden of showing that Exhibits 3–12 meet the Ninth Circuit's exceptions to the bar on supplementing the record, the Court accordingly DENIES Plaintiffs' motion to supplement the administrative record with Exhibits 3–12.

### 2. Judicial Notice

Plaintiffs moved, alternately, that the Court could take judicial notice of Exhibits 3–12. Defendants do not oppose judicial notice for Exhibits 3–11 but do oppose it for Exhibit 12. This issue is complex, as there are different standards of review for each claim. Extra-content information used for Plaintiffs' ESA claim is governed under one standard of review for judicial notice, while non-ESA claims that are governed by the APA's scope of review are also governed by the APA standard of review for judicial notice. *Friends of the Clearwater*, 523 F. Supp. 3d at 1219–1223 (D. Idaho 2021). While this bifurcation leads to a peculiar result of noticing judicial information for certain claims and not for others within the same case, such a conclusion is in line with recent Ninth Circuit precedent. *See National Family Farm Coalition v. U.S. Environmental Protection Agency*, 966 F.3d 893, 926 n.11 (9th Cir. 2020) (considering information outside the administrative record for the limited purpose of reviewing an ESA claim but not when reviewing a FIFRA claim). The Court will first discuss the varying legal standards, followed by how those standards apply to the documents at issue.

MEMORANDUM DECISION AND ORDER - 25

a.  Non-ESA Claims

Claims in which the scope of review is governed by the APA have a higher standard

that information must meet in order to be judicially noticed. "In cases where the scope of

review is governed by the APA and a plaintiff seeks to have the court consider extra-record

evidence through judicial notice, that evidence still must meet one of the exceptions

identified in *Lands Council*, 395 F.3d at1030 to be added to the record." *Friends of the*

*Clearwater*, 523 F. Supp. 3d at 1222 n.4 (citing *Bear Valley Mut. Water Co. v. Jewell*, 790

F.3d 977, 986 n.2 (9th Cir. 2015)); *All. For Wild Rockies v. Probert*, 412 F. Supp. 3d 1188,

1198 (D. Mont. 2019). Those four exceptions are:

> (1) if admission is necessary to determine whether the agency has considered
> all relevant factors and has explained its decision, (2) if the agency has relied
> on documents not in the record, (3) "when supplementing the record is
> necessary to explain technical terms or complex subject matter," or (4) when
> plaintiffs make a showing of agency bad faith.

*Lands Council*, 395 F.3d at 1030 (cleaned up).

b.  ESA Claims

Claims in which the scope of review is governed by the ESA have a lower standard

that must be met in order for the information to be judicially noticed. Indeed, the standard

for ESA claims is similar to the standard that is normally applied for general judicial

notice.[8] In *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011), the

---

[8] The Court acknowledges that other courts within the Ninth Circuit have handled this bifurcation of standards differently. For example, the Federal District of Montana has applied the same four exceptions standard from *Lands Council* but in a "relaxed" manner that isn't as narrowly constructed. *Alliance for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188 (D. Mont. 2019) (quoting *All. for Wild Rockies v. Kruger*, 950 F. Supp.2d 1172, 1177 (D. Mont. 2013)). However, until the Ninth Circuit rules otherwise, the above method is the standard that this Court will use.

Ninth Circuit "did not set out a specific standard as to what evidence a court may rely on in considering an ESA claim" although it did lay out a few guideposts. *Friends of the Clearwater*, 523 F. Supp. 3d at 1221. "First, the bar to using post-decision information to challenge an agency's decision applies in ESA cases." *Id*. "Second, the evidence must be relevant to the question of whether relief should be granted." *Id*. at 1222. "Third, because the evidence is not part of the record, it must be otherwise admissible." *Id*.

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). "But a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Id*. (quoting Fed. R. Evid. 201(b)). *See also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015) ("We may take judicial notice of official information posted on a governmental website, the accuracy of which is undisputed." (cleaned up)).

Thus, the Court may take judicial notice of government documents to prove their existence and contents, but not for the truth of the matters asserted therein when the facts are disputed. *Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011); *accord Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 848 n.1 (9th Cir. 2019); *Ctr. for Env'tl Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1011 n.5 (9th Cir. 2011*); Dent v. Holder*, 627

F.3d 365, 371–72 (9th Cir. 2010). With these standards explained, the Court now turns to Plaintiffs' exhibits.

c. Exhibits 3–11

Defendants have not opposed the Court taking judicial notice of the existence and contents of Exhibits 3–11, although not for the truth of matters asserted therein. Dkt. 63, at 20. Taking judicial notice of exhibits for their existence and contents but not for their truth has precedent within the Ninth Circuit. *E.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *Friends of the Clearwater*, 523 F. Supp. 3d at 1223. As Defendants do not oppose the request, and the type of judicial notice has precedent, the Court takes judicial notice of Exhibits 3–11 for their existence and contents.

d. Exhibit 12

Defendants oppose the Court taking judicial notice of Exhibit 12. Accordingly, the Court will review Exhibit 12 for judicial notice for both non-ESA claims and for ESA claims. Exhibit 12 is the Forest Service Manual, which is 153 pages long. The Manual covers a wide variety of topics, including administrative authority and the ability to delegate said authority, special-use permits, easements, pipeline corridors, and the attendant procedures. Plaintiffs claim it is relevant to their "argument regarding the requirements that apply to special use permits, right-of-ways, and pipeline corridors on National Forest lands." Dkt. 63-1, at 19.

Exhibit 12 does not meet the heightened standard for non-ESA claims because it does not meet any of the four exceptions in *Lands Council*. Here, the burden is on the plaintiff to show that the information fits into the exceptions. Plaintiffs have not shown that

"admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision.'" *Southwest Ctr. For Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443. 1450 (cleaned up). While Exhibit 12 may be useful, Plaintiffs' short explanation is not sufficient to demonstrate that admission is necessary or meets this exception. The Court freely acknowledges that Exhibit 12 is related to Plaintiffs claims. However, the legal standard for relevance is high in these situations, and Plaintiffs have not met their burden. They also have not demonstrated that "the agency has relied on documents not in the record" or that "supplementing the record is necessary to explain technical terms or complex subject matter." *Id*. Plaintiffs certainly have not demonstrated any bad faith on the part of the agencies. *Id*. As such, the Court will not take judicial notice of Exhibit 12 for non-ESA claims.

The Court will, however, take judicial notice of Exhibit 12 for ESA claims because the standard is much lower. *See Friends of the Clearwater*, 523 F. Supp. 3d at 1223. It is clear that the Forest Service Manual is not a post-decisional document. It is also clear that the Manual is relevant[9] to the Plaintiffs' claims and would likely be admissible under the Federal Rules of Evidence.

In summary, the Court will take judicial notice of Exhibit 12 for ESA claims—for their existence and contents—but will not take judicial notice of Exhibit 12 for non-ESA

---

[9] The use of the term "relevant" in ESA and non-ESA claims is ripe for confusion. When differentiating between the claims, the standard for "relevant" shifts. In large part, this is because *Lands Council* also specifies that relevant material must be "necessary." *Lands Council*, 395 F.3d at 1030. In some ways, it is easiest to ask, whether a reasonable person would consider the evidence relevant for ESA claims, and then ask, for non-ESA claims, ask if the evidence is so relevant that the agency was blinding themselves by not reviewing it.

claims.

3. *Citations to Extra-Record Content*

Defendants proposed that Plaintiffs' "may cite to" Exhibit 12. Dkt. 63, at 20. As far as this Court can tell, such a route is a dead end, unsupported by judicial precedent. Defendants did not explain why allow "citations" is an adequate accommodation, especially considering that the Court is bound by the four corners of the administrative record in making its review, as well as judicially noticed facts. *Nw. Env'tl Advocates*, 460 F.3d at 1144. Thus, ruling that parties are allowed to "cite" to extra-record evidence in administrative reviews would be at odds with relevant caselaw, and, as far as the Court can tell, rather useless. Thus, the Court does not support Defendant's suggested citation accommodation.

## V. CONCLUSION

In summary, the Court GRANTS Plaintiffs' motion that Defendants complete the administrative record with documents applying NWP 12 to the Project. The Court also rules that Plaintiffs are proceeding on a facial challenge to NWP 12's use on the Project. The Court DENIES Plaintiffs' request that Defendants complete the administrative record with the EPA Comment Letters referenced in Exhibits 1 and 2. The Court also DENIES Plaintiffs' request that Defendants produce a privilege log and DENIES Plaintiffs' blanket request for all other documents.

The Court TAKES NOTICE of Exhibits 3–11 for the existence and contents therein. The Court TAKES NOTICE of Exhibit 12 for the existence and contents therein for ESA

claims but DENIES Plaintiffs' request that the Court take notice of Exhibit 12 for non-ESA claims.

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion to Supplement the Administrative Record, Complete the Administrative Record, and/or Take Judicial Notice (Dkt. 62) is **GRANTED in PART and DENIED in PART** as described above.

DATED: December 1, 2021

David C. Nye
Chief U.S. District Court Judge